Case No. 24-1001, Eagle v. Tinsdale-Nicholson, USI Insurance Service National. Good morning, Your Honors. May it please the Court. I'm Kevin Schlosser of Meyers-Swassey English & Kline, and I represent three separate appellants today. Mr. Eagle, Pine Creek LLC, and University 1248, LLC. I know there are a lot of issues in the briefs and the papers, but today I want to address five, what I call, jump-off-the-page points that critically show why USI should not have received summary judgment. Now, as the Court is aware, the other appellants have achieved a settlement with the plaintiffs, so the only appellee right now is USI. So, jumping off point number one, the District Court lumped all of these plaintiffs together, and they are most certainly separate. In considering whether they are bound by their respective agreements, you must necessarily determine whether each separate party is a party to the agreement. And let me just define how I'm going to refer to both agreements so we're all on the same page. The three-page document we've been calling the release, I'm going to refer to that as the release, and then the longer document that's referred to in the papers as the CFA, I'll refer to that. So, during the course of the argument, we have to address both of these agreements. Judge Carney, did you have a-  So, my point now is three separate appellants, three separate parties. University and Pine Creek are not parties to the release. The only hook that USI has is a vague reference to Mr. Eagle's, quote, affiliates. So, issue number one, what is an individual's affiliates? Okay, that is a question that the District Court did not address and is not resolved, and it's a question of fact and law. But even if you were to determine somehow that these two separate LLCs are an individual's affiliates, they aren't parties to the release. They didn't sign the release, and under basic contract law, how could you bind somebody to a contract when they're not a party to it and they don't sign it? A third party beneficiary or the- I'm sorry? Someone, a party, or an individual seeking to take advantage of release doesn't have to be bound by other obligations in the agreement in order to be the beneficiary of a release, though. When you keep talking about being bound, I think of the release that Mr. Eagle signed as being a very broad release of claims and benefiting the other party to the transaction. So, being bound, it's not as if they had an obligation in order to benefit from the release of claims by affiliates. Okay, so there are two separate issues here, whether- Okay. USI is deemed the third party beneficiary. Yeah. But here, what I'm saying is the releasing party, the party who is supposedly bound by the release, didn't sign this contract. And even if you would say that University or Pine Creek are third party beneficiaries of this, they're not bound to perform it. They only receive the benefit of it. But it's kind of the same concept, though, because Mr. Eagle, of which he was the member of University and the other LLC, he was in a position, being managing member, to execute a release on their behalf, and the release that he executed was very broadly framed and said, and I release claims that my affiliates might have. So why doesn't that cover them? Because they're not parties to it. If he is making some sort of statement or representation that he's bound by, they may have a contract with him and he has responsibilities under it. But if two other parties are not signing it and they're not bound by it, he can't bind somebody who's not part of the contract. They're not even listed as a party to it. Okay, so that's jumping off point number one. And jumping off to page number two is that the release is absolutely unenforceable because there's a breach of the warranty by EVMC. Section 1.2 of that release states quite clearly that they are making a warranty to the other party that they're involved in the process of getting financing, and they're able to do that. If that warranty is false, then it's a breach of the contract. A warranty is different than a promise. But you said the warranty was a promise. And the warranty, as I read it, EVMC warrants, that it is and continues to be in discussions with potential funding sources regarding the project referred to as Highlands 7700 LLC, potential funding sources in discussions. That's a far cry from getting funding. But that's the contract your client signed, right? So I don't see how that amounts to a violation. Okay, so number one, a warranty is different than a promise because it has to be truthful. If it's false, then it's breached. However, in relation to your question, okay, everybody has indicated that EVMC was a complete, utter fraud. It was not making any attempts to get any financing. It didn't have any opportunity to get any financing. And USI specifically states in its own brief that EVMC was perpetrating a fraud on Eagle and had no ability to either procure or provide the financing he sought. Now, that on its face proves that that warranty was simply false, and they admit it. Another jump off the page point is the fact that USI is not named in either release or the CFA. However, they're arguing now in their brief that they're covered as a third-party beneficiary because they're a successor in interest to Wells Fargo. They say that on page 23, 24, and they argue it on page 27. That's how they get standing for protection under these two agreements, as a successor in interest. However, neither contract covers successors in interest as releasees. It covers the agents and consultants. So even if they considered Wells Fargo covered by that, it does not cover the agents and consultants' successors in interest. And if they want to live by the words of the actual document, they're bound by that. You can't argue on the one hand, I'm covered as a successor in interest, and then ignore the fact that the very words of this contract exclude successors in interest as releasees. Two more quick points jumping off the page. I don't know if you'll have time for two more, but you can try. Well, one of them is pretty simple, the fact that under the CFA, the court below just simply misread Florida law. Justifiable reliance is not an element of fraud, and the court applied that, and the court held- That case, the Salem case, is that it? It's Butler. Yeah, it's Butler. It makes that statement, but it doesn't actually apply that principle, and it didn't overrule Peter Baker, which says when parties have a history of hostile dealing and are executing a settlement agreement, which is much more akin to what this was, that there is an element of you have to show that you had some due diligence. So I don't understand that one statement to control the Florida law on this issue. I think if you look at Butler and you look at the patent jury instructions of Florida, the elements of the claim of fraudulent inducement simply don't include justifiable reliance. But at the very least, the district court should apply the correct standard, and if the court- But has Peter Baker been overruled in Florida? I'm not sure. I don't- I don't think so. I believe Butler- I think it's a special- I think there's different- If you look at the facts of those cases and the statements, they're different, and I would say Peter Baker controls here. Thank you, Your Honor. Yeah, thank you. Thank you. May it please the court, Peter Bigging on behalf of the appellee. I'm going to just, I guess, try to respond to each of the points that were raised. So number one, appellants argued that the district court lumped all of the plaintiffs together, and you must necessarily define the parties by agreement, to the agreement. And as Judge Carney pointed out, Eagle was the operating manager and actually the sole member of both of those two entities, Pine Creek and University. Some additional members were added to one of them, but that was later on, right? That was later on, correct, Your Honor. And so he clearly, pursuant to the terms of the operating agreement, which was in the record, he had the authority to conduct the business and affairs of the company and exercise all powers of the company and perform or authorize performance of all lawful acts. So clearly he had the authority to enter into an agreement that affected their rights. When you look at, when he talks about affiliates, there's basic contract law that tells you that you're supposed to look at the common language, English language usage of the terms used to determine what the meaning is. And we pointed to the Merriam-Webster dictionary definition of affiliation as the state or relation of being closely associated or affiliated with a particular person, group, party, company, et cetera. I also note that there's a Thomson Reuters practical law glossary of legal terms that can be found online, which defines an affiliate as, quote, a person or entity that directly or indirectly controls, is controlled by, or is under common control with another person or entity. That definition squarely applies here, and that definition can actually be found in Rule 405 of the Securities Act of 1933 and Rule 12b-2 of the Securities Exchange Act of 1934. It's a common definition. Counsel, can you address your opponent's argument, as well as made in the briefs, that why should USI be considered a third-party beneficiary to the release agreement when it is a successor in interest to Wells Fargo? And according to him, the plain language of the release agreement does not include successors. Yes, Your Honor. So Wells Fargo Insurance Services was the broker and consultant to EVMC. There was a client services agreement that was entered into that specifically engaged them in those roles. As broker and consultant, they were also, by law, an agent of EVMC, and so they squarely fit the definition of a release agreement. I don't think that was his argument. No, I understand that. His argument was the successor, USI. So Wells Fargo Insurance Services was clearly covered by the release. The release was effected in 2008. In 2017, nine years later, USI purchased and acquired Wells Fargo Insurance Services and assumed its name. The argument that Appellant is promoting is that notwithstanding the fact that the claims were released and had been gone for nearly a decade, the fact that USI then purchased the entity magically reinvigorated and revived these claims that had been long gone. That's just there's no basis in the law for that argument. It's illogical, and Appellant cites no case law or other authority for that argument. Could you also turn to the discussion we just had about the effect, whether reliance is needed, justifiable reliance is needed in a release situation or for a fraudulent inducement claim under Florida law? Yes, Your Honor. I agree with you, and I think we laid out in our briefs that Peter Baker was not overruled. And, in fact, we cite to a 2024 case, which cites Morrison v. Delray Medical Center, Inc., 2024 U.S. District Lexus 71757 at 17-18, cites, quote, a line of binding 11th Circuit cases holding that, as a matter of law, a person represented by counsel cannot justifiably rely on a statement made by an adverse party who that person has accused of fraud or dishonesty. So, in this case, clearly, as Judge Brown pointed out in pages 5 to 8 of his decision, there was a lengthy history between the parties that had gone on before these releases were entered into. And during that period of time, over a two-year period, numerous deadlines were missed, promises were made that were not kept. Eagle's own lawyer wrote a letter questioning their, quote, unquote, bona fide intentions. He even also reached out to a lawyer for EVMC, a prior lawyer for EVMC, who questioned whether they were, quote, unquote, for real. And he specifically identified a number of misrepresentations. So he clearly had questioned their honesty and questioned their bona fide intentions. So, clearly, that line of case law that has not been overruled. And what's the 2024 case you just referred to? It is, I'm sorry, let me go back to it. We cite other cases as well, but that is one of the most recent ones. It is Morrison v. Delray Medical Center, Inc. Okay, thank you. And then there's also Maribor v. Dreiling. Maribor, yeah. Which is 194 Southern 3rd, 369, Florida District Court of App, 2016. Thank you. The last point that he made, or that Counsel for Appellants made, was that USI was not named in either release or the credit facilities agreement. I addressed that earlier in responding to Justice Cahn's, Judge Cahn's. And what about his argument that they were in breach, that they weren't actually, that the company was not actually trying to secure financing? He said the whole agreement should be. Yes, thank you, Your Honor. So, there were, this case is an amazing case. I've had this case since 2009. I've seen a lot of life pass during the course of this case. There were 73 deposition dates taken. There were over 25 non-party subpoenas issued. Hundreds of thousands of documents. As Judge Brown properly stated, the burden on USI, on summary judgment, was to put forth a valid contract, and they did. It then became the burden of the appellant to identify material issues of fact and evidence, admissible evidence, that would undermine the contract. In return for these releases, Eagle bargained for two things. He wanted a, he wanted a, in the first release agreement, he asked for a, I'm sorry, he asked for evidence of funding that was available. Some documents showing that there was funding that was available. And then he asked for the parties to agree to negotiate to a loan commitment that he could then show to his creditors, of which there were many, and of which he had liabilities of almost a quarter of a billion dollars. He needed this document. He needed this loan commitment. So, he asked for those two things. The evidence showed, as Judge Brown pointed out, that he was provided with a document evidencing funding, and the evidence showed that within ten days, as required, they negotiated the loan commitment, which was they ended up in a loan commitment. And then he signed the loan commitment with another release as part of it. So, in all of that discovery that was taken, there has been no evidence presented that either of those conditions were not met. And now Appellant argues that, well, the whole thing was a sham. The evidence shows that. The evidence throughout the record in this case shows that the EVMC repeatedly promised that they were going to be able to try to find funding, and that's the promise that they made in the credit facilitation agreement. The evidence shows that they never actually got the funding. There was no evidence that was presented in opposition to this summary judgment motion that the proof of funding document was a fraud, or that they didn't negotiate, or that they never had the ability or intent to try to find the funding. And Appellant quotes from our brief, but he quotes an excerpt of it that clearly misstates what we stated. Well, there was a lot of evidence that all these closing deadlines were missed and that at least one fictitious person or person that later was determined not to exist. The question is whether the plaintiff here should have known that over this long history of paying a lot of money for nothing, basically. But that's a separate question, but I don't think that I'm not sure it's really accurate to say that this was a real effort to get financing here and that there was no misrepresentation. The bottom line, though, is that Mr. Eagle was buried under a mountain of debt. He had committed bank fraud, which he was trying to find financing to try and cover up. He ended up going to federal prison for six years as a result of that bank fraud. What he needed was a loan commitment that he could show to his creditors that there was funding coming, and he bargained for that, and he got what he bargained for. Let me just lastly say, because I think the quote that comes from our brief is misrepresented. Rather than read it, I'll ask you to look at page four of our brief. That quote was truncated as represented by opposing counsel. It's not what we stated. What we pointed out was that his advisors, his lawyer, his brother, he himself, all had reason to suspect that this was a scam, not that we agreed that it was. Thank you. So with respect to Mr. Eagle's capacity, they claim that he was operating as a managing member. The two agreements that he had with EVMC under University and Pine Creek, he signed as a trustee, which is a different capacity than managing member. It implies you have duties to other beneficiaries. You are a trustee. It creates an issue of fact as his capacity and authority to sign these agreements. Does it make you not an affiliate? Does it make you not an affiliate? Affiliate's a pretty broad term. An individual as an affiliate of some other companies, that's one question. But the second question is, did he sign on their behalf? They aren't a party to either agreement. And University isn't even mentioned in the CFA at all. So this is an entity that didn't sign. They're saying his capacity is proved by his authority as a managing member, authority. It's a different question as to whether it's an affiliate. They're saying the agent here who says he has authority has the ability to bind his principle through his words. That's the point here. There's two other points. Summary judgment is what this is all about. So, of course, there are arguments by the appellees. There are arguments by the appellants. But to rule in favor of the appellees on this motion, given this record, would be doing violence to the standard, which everything is supposed to be inferred in the non-moving party's favor. And I just think under that standard, they have not met their burden. Thank you, counsel. Thank you both. We'll take the case under advisement.